IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CRAVEN CASPER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CASE NO. 2:22-CV-53-RAH-SMD |
| ) | |
| CHIEF UNITED STATES PROBATION ) | |
| OFFICER, SOUTHERN DISTRICT OF ) | |
| FLORIDA, ) | |
| ) | |
| Respondent. ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

**I.   INTRODUCTION**

Pro se Petitioner Craven Casper filed this petition for writ of habeas corpus under 28 U.S.C. § 2241 while incarcerated at FPC Montgomery in Montgomery, Alabama. Casper seeks an order that the Bureau of Prisons ("BOP") apply 12 months (365 days) of First Step Act ("FSA")[1] time credits towards his term of imprisonment and release him from incarceration to the supervised release term of his sentence. Doc. 1.

**II.   FACTUAL BACKGROUND**

On November 10, 2020, the United States District Court for the District of Columbia sentenced Petitioner to concurrent terms of 36 months imprisonment on his convictions for Mail Fraud in violation of 18 U.S.C. § 1341 and Wire Fraud in violation of 18 U.S.C. § 1343 followed by 36 months of supervised release. *See* Doc. 22-2. On March 1, 2022,

---

[1] *See* First Step Act of 2018, Pub. L. No. 115–391, §§ 504, 603, 132 Stat. 5194 (2018).

Petitioner was released to home confinement in Washington, D.C., under the CARES Act.[2] Docs. 22-3, 22-4. The BOP released Petitioner on or about June 22, 2022 (*see* Doc. 22-1 at 2), and he is on supervised release in Miami, Florida.[3] *See* Doc. 30.

### III. PROCEDURAL HISTORY

Respondent filed a response and supporting evidentiary materials arguing the petition is due to be dismissed because Petitioner did not exhaust his available administrative remedies through the BOP before filing his petition. Doc. 22. The Court granted Petitioner an opportunity to respond (Doc. 23), and he did so (Doc. 24). The petition is ripe for review.

### IV. DISCUSSION

#### A. Jurisdiction & Venue

The law is settled that a 28 U.S.C. § 2241 petition for writ of habeas corpus is the proper vehicle for a prisoner to challenge the manner, location, or execution of his sentence. *Lopez v. Davis*, 531 U.S. 230, 236 (2001); *McCarthen v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1092-93 (11th Cir. 2017); *Williams v. Pearson*, 197 F. App'x 872, 877 (11th Cir. 2006). Petitioner's habeas application challenged the BOP's conduct about the calculation of sentencing credits under the FSA and those claims are considered proper

---

[2] Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). *See* PL 116-136, § 12003(b)(2), March 27, 2020, 134 Stat. 281.
[3] Because Petitioner is on supervised release in Miami, Florida, the Warden of FPC Montgomery is no longer the proper respondent. Rather, the proper respondent is Petitioner's current custodian, the Chief United States Probation Officer for the Southern District of Florida, who is supervising Petitioner's case. *See* 18 U.S.C. § 3624(e) ("A prisoner whose sentence includes a term of supervised release after imprisonment shall be released ... to the supervision of a probation officer[.]"); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004).

under the procedural mechanism of 28 U.S.C. § 2241. Venue is likewise proper because Petitioner was incarcerated in this district when he filed the petition. *See e.g., Fernandez v. United States*, 941 F.2d 1488, 1495 (11th Cir. 1991) (holding that a 28 U.S.C. § 2241petition for habeas corpus relief generally must be brought in the district court where the inmate is incarcerated.); *Brown v. Warden of FCI Williamsburg*, No. 8:19cv546-HMH-JDA, 2019 WL 1780747, at *2 (D. S.C. Mar. 25, 2019), *report and recommendation adopted*, No. CV 8:19-546-HMH-JDA, 2019 WL 1773382 (D. S.C. Apr. 23, 2019) (finding that a § 2241petition must be brought against the warden of the facility where the prisoner is being held and in the district of confinement rather than in the sentencing court) (*citing* 28 U.S.C. § 2242 and *United States v. Miller*, 871 F.2d 488, 490 (4th Cir. 1989)).

### B. Mootness

During the pendency of this action Petitioner was released from prison and placed on home confinement in Washington, D.C., on March 1, 2022. *See* Docs. 22-1, 22-2, 22-4. Therefore, Petitioner's request for immediate discharge from BOP custody to supervised release (Doc. 1 at 7) is now moot. *See Soliman v. U.S. ex rel. INS*, 296 F.3d 1237, 1242 (11th Cir. 2002) (internal quotation marks and citation omitted) (finding "a case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief."); *Westmoreland v. Nat'l Transp. Safety Bd.*, 833 F.2d 1461, 1462 (11th Cir. 1987) (holding that "[w]hen effective relief cannot be granted because of later events, the [case] must be dismissed as moot."). *Miller v. Whitehead*, 527 F.3d 752, 756 (8th Cir. 2008) (dismissing § 2241 appeal as moot because inmates had received the requested relief of placement in a residential re-entry center ("RRC.")).

### C.     Exhaustion of Remedies

If Petitioner seeks to challenge the amount of FSA credits the BOP awarded him (126 days), Respondent argues the claim is not moot but subject to dismissal for Petitioner's failure to exhaust administrative remedies. Doc. 22 at 5–8. It is well established that a federal prisoner who seeks habeas corpus relief under 28 U.S.C. § 2241 "must [first] exhaust his available administrative remedies before he can obtain relief [from this court in a habeas action].").  *Davis v. Warden, FCC Coleman-USP*, 661 F. App'x 561, 562 (11th Cir. 2016) (*citing Santiago-Lugo v. Warden*, 785 F.3d 467, 474–75 (11th Cir. 2015)); *Carmona v. U. S. Bureau of Prisons,* 243 F.3d 629, 632, 634 (2d Cir. 2001); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986); *Fuller v. Rich,* 11 F.3d 61, 62 (5th Cir. 1994). Although "the administrative-exhaustion requirement was judge-made, rather than jurisdictional . . . [t]he [administrative] exhaustion requirement is still a requirement; it's just not a jurisdictional one."  *Santiago-Lugo*, 785 F.3d at 474–75. "[T]he benefits of [requiring] exhaustion . . . include allowing a prison to address complaints about the program[s] it administers before being subject to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007) (internal citations omitted).

"In order to properly exhaust administrative remedies, a petitioner must comply with an agency's deadlines and procedural rules." *Davis*, 661 F. App'x at 562 (*citing Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)) (addressing the exhaustion requirements of the Prison Litigation Reform Act governing inmate civil rights actions).  In *Woodford*, the

4

Court determined that because proper exhaustion of administrative remedies is necessary an inmate cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him.  548 U.S. at 83–84.  The Court reasoned that to hold otherwise would eviscerate the exhaustion requirement.  *Id*. at 90–91; *see also Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (holding that an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA); *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (holding inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement).  Thus, when a federal inmate fails to fully and properly exhaust all the administrative remedies provided by the BOP before filing his habeas petition, the petition is due to be denied for such failure.  *See Davis*, 661 F. App'x at 562.

Respondent submitted Declarations by J. Latease Bailey-Close, Consolidated Legal Center Leader/Supervisory Attorney for the BOP, detailing the formal administrative remedies available to Petitioner and his failure to properly exhaust these remedies. *See* Doc. 22-5; *see also* Doc. 19-4. Ms. Bailey-Close states the BOP provides a specific administrative remedy procedure through which inmates can present claims regarding their confinement to prison officials. 28 C.F.R. § 542.10, et seq., (the administrative remedy program allows inmates to seek formal administrative review of issues relating to any aspect of the inmate's confinement). Pursuant to the administrative process, an inmate must

5

first present any issue relating to any aspect of their confinement to the warden of the facility where the inmate is detained by utilizing a form BP-9. 28 C.F.R. § 542.13(a), 14(a). If the inmate is dissatisfied with the warden's response, further review is available by the BOP's regional director. 28 C.F.R. § 542.15. If the inmate is not satisfied with the response from the regional director, the inmate can seek review with the BOP's Office of General Counsel. *Id.* A final decision from the Office of General Counsel completes the BOP's administrative review procedure. 28 C.F.R. § 542.15(a). Doc. 19-4 at 2–3.

In her Declaration dated April 21, 2022, Ms. Bailey-Close testifies:

[] …[I]n my review of the original petition filed by inmate Craven Casper reg. no. 35718-016, he alleged that he was owed all available program credits under the First Step Act (FSA) which would make him immediately eligible for Residential Reentry Center (RRC or "halfway house") placement. As I read Petitioner's subsequent filings, it is clear he believes the program credits he is owed should mean that he is immediately releasable from BOP custody to the supervised release portion of his sentence.

[] I have again reviewed the Administrative Remedy requests for inmate Casper. The updated (as of March 22, 2022) Sentry Administrative Remedy Log for inmate Casper is attached to this declaration (Attachment 2). It reflects that he has filed remedy numbers 1096523-Fl, -Rl, -Al, -A2, and -A3, requesting FSA credit.

[] Remedy requests 1096523-Fl, and -Rl, were accepted and inmate Casper received a response. (Attachment 3)

[] However, remedy requests 1096523-Al, -A2, and -A3, have all been rejected. -Al was rejected because inmate Casper did not provide a copy of either his institution or regional administrative remedy requests. -A2 was received in OGC on January 27, 2022 and rejected on February 17, 2022, because it was on the wrong form and inmate Casper did not provide a copy of his institution request (BP-9). -A3 was received in OGC on February 23, 2022. It was rejected on March 21, 2022, because inmate Casper's attachments were chaotic and confusing. In the rejection notice, inmate Casper was given specific instructions, in the "Remarks" on what to do to properly submit his appeal to that level.

> [] With each rejection, inmate Casper was instructed to cure the defect(s) and resubmit with[in] 15 days. There is no record of him doing so. Therefore, inmate Casper has NOT exhausted the available remedies with regard to getting FSA credits.
>
> [] Further, in his first remedies (BP-9 and BP-10) regarding FSA time credits, inmate Casper states that he expects to receive all credits. At the time – October 2021 – his credits had not yet been computed.
>
> [] Once the credits were computed, unit team determined inmate Casper was due 126 credits.
>
> [] There is no record of inmate Casper appealing the determination of the amount of credits he received through the Administrative Remedy Process. Therefore, inmate Casper has failed to exhaust the available remedies regarding the number of FSA credits he has been granted.

Doc. 22-5 at 2–3.

In response, Petitioner claims the BOP never responded to his final administrative remedy (BP-11), and he resubmitted all BOP forms and all supporting documents which he submitted with his habeas petition (Doc. 1). Doc. 24 at 4–5. Petitioner further states he is not in possession of any original documents because the BOP is in possession of the originals, but he did resubmit copies of all his BOP administrative remedy forms and supporting documents exactly as he did with his application for habeas relief. *Id.* at 5. Review of the parties' evidentiary submissions, however, reflects Petitioner failed to properly exhaust the multi-level administrative remedy established by the BOP because he filed no remedy requests regarding the specific amount of FSA credits he received, and which were awarded after he submitted his initial remedy requests (BP-9 and BP-10) regarding an award of FSA credits. *See* Doc. 22-5 at 7–8, 25–34. There is no record that Petitioner appealed the BOP's determination regarding the actual amount of federal time

7

credits he was ultimately awarded. Doc. 22-5 at 2–34. Thus, Petitioner failed to satisfy the requirement that he exhaust his available remedies before seeking habeas corpus relief in this Court. In addition, no circumstances have been presented which justify waiver of the exhaustion requirement.[4]

### D. Application of FSA Credits to Supervised Release Term

In liberally construing Petitioner's later filings, *see Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), the Court addresses his claim that he has unused FSA credits amounting to 365 days which he requests be applied to his term of supervised release. *See* Docs. 31, 33, 35, 37, 38, 41, 43–48, 50. Review of Respondent's evidentiary material reflects that Petitioner participated in the Residential Drug Abuse Program (RDAP). *See* Doc. 19-1 at 3; Doc. 22-2 at 2. Participation in RDAP may provide up to a reduction of 12 months off an inmate's sentence under the FSA upon successful completion of the program. *See* 18 U.S.C. § 3621(e)(2)(B).

---

[4] *See Covell v. Scibana*, 21 F. App'x 291, 293 (6th Cir. 2001) (holding that an inmate who had been released from BOP custody was still required to exhaust his administrative remedies because "the Administrative Remedy Program applies to former inmates for issues that arose during their confinement"); *Peete v. United States*, No. 2:23-cv-10137, 2023 WL 2472623, at *2 (E.D. Mich. Feb. 13, 2023) (finding that a prisoner on supervised release was required to exhaust his administrative remedies before pursuing a § 2241 claim for a reduced term of supervised release under the First Step Act.); *Gratton v. Dismas Charities, Inc.*, No. 3:20-00509, 2021 WL 4163992, at *5 (M.D. Tenn. Aug. 20, 2021), *report and recommendation adopted*, No. 3:20-CV-00509, 2021 WL 4149126 (M.D. Tenn. Sept. 13, 202121)) ("[Petitioner argues] it would be futile to pursue exhaustion because he is past his release date.... [T]he possibility of Petitioner's continued pursuit of an administrative remedy exists given that the remedies provided by 28 C.F.R. §§ 542.13–542.15 may be pursued by 'former inmates for issues that arose during their confinement.'"); *see also* 28 C.F.R. § 542.10(b).

Petitioner's initial projected release date was October 26, 2022, under 18 U.S.C. § 3621(e). *See* Doc. 22-2 at 2–5. After the BOP calculated Petitioner's earned time credits, he was awarded 126 FSA credits resulting in a projected release date of June 22, 2022. Doc. 22-1; Doc. 22-2. Thus, as noted, Petitioner is no longer in custody of the BOP and is presently serving his term of supervised release. *See* Doc. 30.

Under 18 U.S.C. § 3632(d)(4)(A), eligible prisoners may earn time credits for participation in "evidence-based recidivism reduction programming or productive activities." Application of these earned time credits occurs when the prisoner's credits are "equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A). Pursuant to 18 U.S.C. § 3632(d)(4)(A) & (C) earned time credits "shall be applied toward time in prerelease custody or supervised release." Prerelease custody consists of either home confinement or placement at a residential reentry center. *See* 18 U.S.C. § 3624(g)(2)(A)-(B). If a prisoner's sentence includes a term of supervised release, the BOP may also "transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of [the earned] time credits ..." 18 U.S.C. § 3624(g)(3).

In the event Petitioner maintains that the language of 18 U.S.C. § 3632(d)(4)(C)—that application of time credits earned under § 3632(d)(4)(A) "shall be applied toward time in prelease custody or supervised release"—amounts to a mandate requiring an order that his supervised release term be reduced by any outstanding or additional unapplied FSA time credits, there is no authority for granting this relief found in the applicable statutes and regulations. As explained, under 18 U.S.C. § 3624(g)(3), if, as a part of a prisoner's

9

sentence, a sentencing court has included a term of supervised release under 18 U.S.C. § 3583, FSA credits may be used to begin the prisoner's supervised release term early. The statute, however, has no provision for reducing the length of the term of supervised release. This interpretation of § 3624(g)(3) regarding application of FSA credits is in accord with Supreme Court precedent holding that the length of a term of supervised release cannot be reduced "by reason of excess time served in prison." *United States v. Johnson*, 529 U.S. 53, 60 (2000). The *Johnson* Court explained that "[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration." *Id.* at 59. *See also United States v. Peters*, 856 F. App'x. 230, 233 (11th Cir. 2021) (quoting *Mont v. United States*, 587 U.S. ___, 139 S.Ct. 1826, 1833 (2019) ("The objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release because [s]upervised release has no statutory function until confinement ends.").

In *United States v. Calabrese*, No. 1:11-CR-437, 2023 WL 1969753 (N.D. Ohio Feb. 13, 2023), the court considered the movant's request to apply his earned FSA credits to reduce his supervised release term. After a review of the pertinent statutes, the court determined that § 3632(d)(4)(C) "allows a prisoner to either complete the service of their sentence in prerelease custody or complete their term of supervised release at an earlier date by transferring the prisoner to supervised release at an earlier date" but "does not allow a prisoner to reduce the imposed length of supervised release." *Id*. at *3 (citing *Harrison v. Fed. Bureau of Prisons*, No. 22-cv-14312, 2022 WL 17093441, at *1 (S.D. Fla. Nov. 21, 2022). In reaching its conclusion, the court considered the use of the word "toward" in § 3632(d)(4)(C), *i.e.*, that earned time credits should be applied *toward* a term of supervised

10

release, and determined that use of this word "means that credits can be applied to bring 'time in prerelease custody or supervised release' closer to occurring because credits applied 'toward' something generally means to bring that something closer to happening. Black's Law Dictionary (11th ed. 2019) (defining 'toward,' in relevant part, as 'in the direction of; on a course or line leading to (some place or something)')."[5] Other courts to consider this issue have reached the same conclusion. *See e.g., Harrison*, No. CV 22-14312, 2022 WL 17093441, at *1 (S.D. Fla. Nov. 21, 2022) (finding that ["b]ased on the plain text of the statute, FSA credits cannot be used to shorten a term of supervised release. Rather, the credits can only be used to allow early transfer to supervised release."); *Defoy v. McCullough*, 393 F.3d 439, 442 n. 3 (3d Cir. 2005) (noting that a term of supervised release cannot be shortened due to excess incarceration); *United States v. Scriven,* 5:16-CR-174-IBO, 2023 WL 5811250 (E.D. N.C., September 7, 2023) (quotation marks and citation omitted) ("[A] defendant is not entitled to apply his additional [Fair Sentencing Act] time credits to reduce his term of supervised release because the statute does not allow it."); *Berry v. Gabby*, 4:23CV121/LAC/MAL, 2023 WL 6798869 (N.D. Fla. Sept. 15, 2023), *report and recommendation adopted*, No. 4:23CV121-MW/MAL, 2023 WL

---

[5] Notably, in *Dyer v. Fulgham*, No. 1:21-CV-299-CLC-CHS, 2022 WL 1598249, at *3 (E.D. Tenn. May 20, 2022), the court concluded that "the unambiguous, mandatory language of the statute provides that earned-time credits may be applied to a term of supervised release." However, as discussed in the Recommendation, there is little consensus among courts for the conclusion reached in *Dyer*. *See also Shiflet v. Yates*, No. 2:22-cv-161-BSM-PSH, 2023 WL 2817333, at *3 (E.D. Ark. Feb. 9, 2023), *report and recommendation adopted*, No. 2:22-cv-161-BSM, 2023 WL 2813877 (E.D. Ark. Apr. 6, 2023) (finding that *Dyer* "is unpersuasive and should not be followed"); *Pillow v. Bureau of Prisons*, No. 4:22-cv-00713-PSH, 2022 WL 13892877 (E.D. Ark. Oct. 21, 2022) (declining to follow *Dyer*).

6794978 (N.D. Fla. Oct. 13, 2023) (citations omitted) (finding that "[b]ased on the plain text of 18 U.S.C. § 3624(g)(3), FSA credits cannot be used to shorten a term of supervised release."); *Sila v. Warden*, EDCV221632RSWLAS, 2023 WL 2504476, *2 (C.D. Cal. Feb. 13, 2023), *report and recommendation adopted*, No. EDCV2201632RSWLAS, 2023 WL 2504989 (C.D. Cal. Mar. 13, 2023) (finding that "[t]he First Step Act requires the BOP to transfer inmates to prerelease custody or supervised release when such inmates become eligible based on earned time credits under the Act …, but it does not provide for a reduction of supervised release terms, and the BOP is not authorized to reduce such terms."); *see also Goggans v. Jamison*, No. 1:23-CV-03645-GHW, 2023 WL 7389136, at *2 (S.D.N.Y. Oct. 13, 2023); *Goldblatt v. Ortiz*, No. CV 20-19987 (NLH), 2022 WL 1639007, at *2 (D.N.J. May 24, 2022); *Zimmer v. Marske*, 2022 WL 4016623, at *1 (W.D. Wis. Sept. 2, 2022).

Here, like numerous courts to consider the issue, the Court finds no authority on which to grant the relief sought by Petitioner. Even if Petitioner could demonstrate entitlement to any additional or outstanding FSA credits, based on the controlling statutes and federal regulations, those credits could not be: (1) used to shorten his term of supervised release; (2) applied retroactively to shorten the period of his supervised release; or (3) used to shorten the period of any future imprisonment Petitioner may have to serve for violating a condition of release. *See* 28 C.F.R. § 2.35(b).[6] Therefore, Petitioner's request

---

[6] 28 C.F.R. § 2.35(b) provides:

> It is the Commission's interpretation of the statutory scheme for parole and good time that the only function of good time credits is to determine the point in a

to have unused FSA credits applied to his term of supervised release is due to be denied as the Court finds no authority on which it may grant the requested relief.[7]

## V. CONCLUSION

Accordingly, the undersigned Magistrate Judge RECOMMENDS that:

1. The 28 U.S.C. § 2241 Petition for Habeas Corpus relief filed by Petitioner Craven Casper seeking his release from detention be DISMISSED with prejudice as moot.

2. The 28 U.S.C. § 2241 Petition for Habeas Corpus relief filed by Craven Casper regarding the amount of FSA credits awarded be DISMISSED without prejudice for failure to exhaust administrative remedies.

3. The 28 U.S.C. § 2241 Petition for Habeas Corpus relief filed by Craven Casper seeking a reduction in his term of supervised release based on application of FSA credits be DENIED with prejudice.

It is ORDERED that all pending motions be DENIED.

---

prisoner's sentence when, in the absence of parole, the prisoner is to be conditionally released on supervision, as described in subsection (a). Once an offender is conditionally released from imprisonment, either by parole or mandatory release, the good time earned during that period of imprisonment is of no further effect either to shorten the period of supervision or to shorten the period of imprisonment which the offender may be required to serve for violation of parole or mandatory release.

[7] Notably, Petitioner may move under 18 U.S.C. § 3582(e)(2), in his original criminal case for a reduction of the term of supervision. Further, after at least a year on supervision, Petitioner may seek early termination under 18 U.S.C. § 3582(e)(1). In either circumstance, the matter is left to the discretion of the sentencing court. Leftover good time credits, if such are determined to be available, may be a factor the court chooses to consider, but it is not compelled to do so, or to provide any automatic reduction credits.

The Clerk is DIRECTED to substitute the Chief United States Probation Officer for the Southern District of Florida as the Respondent.

It is further ORDERED that by **February 6, 2024**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive or general objections will not be considered by the Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3–1. *See Resol. Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 23rd day of January, 2024.

    /s/ Stephen M. Doyle
STEPHEN M. DOYLE
CHIEF UNITED STATES MAGISTRATE JUDGE